IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, et al., | } } } | |
| Plaintiffs and counter-defendants, | } } | CIVIL ACTION NO. 09-AR-0536-S |
| v. | } } } | |
| BASHIR'S, INC., d/b/a 40TH STREET GROCERY, BASHIR ABDOSALE MOHAMMED and MOSHEN MUSA, | } } } } } | |
| Defendants, counter-plaintiffs and cross-defendants, | } } } } | |
| HUSAN SHARIF, as the Personal Representative of the ESTATE OF TAWFIQ SHARIF, deceased, | } } } } | |
| Defendant, counter-plaintiff and cross-plaintiff. | } } } } | |

## MEMORANDUM OPINION AND ORDER

Regrettably, the mediation effort voluntarily undertaken by the parties in the above-entitled case has not borne fruit. Accordingly, all motions for summary judgment by the various parties are now under submission.

Rule 56(a), F.R.Civ.P., amended as of December 1, 2010, provides in its last sentence that courts **"should"** state on the record the reasons for a grant or a denial of summary judgment. This court finds it peculiar that the same Rule 56(a), as amended, in an earlier sentence, provides that the court **"shall"** grant

summary judgment if movant is entitled to it.  The commentary to this new amended rule provides, *inter alia*:

> [A] statement of reasons can facilitate an appeal or subsequent trial-court proceedings.  It is particularly important to state the reasons for granting summary judgment.  The form and detail of the statements of reasons are left to the court's discretion.
>
> The statement on denying summary judgment need not address every available reason.  But identification of central issues may help the parties to focus on further proceedings.

This court will not try to make too much of the clear difference between the word "shall" and the word "should", and will recognize some obligation to do more than simply recite that the court finds one or more disputes of material fact that preclude summary judgment.

Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company (collectively "Nationwide") seeks a declaration that it owes no duty to defend or indemnify its named insured, Bashir's, Inc., d/b/a 40th Street Grocery ("Bashir's"), or Bashir Abdosale Mohammed ("Mohammed"), the owner of Bashir's, or Moshen Musa ("Musa"), an employee of Bashir's, all of whom were sued in a state court as a result of the shooting death on January 17, 2006, of Tawfiq Sharif ("decedent"), whose personal representative is Husan Sharif ("Sharif").

Sharif sued Bashir's, Mohammed, and Musa in the Circuit Court of Jefferson County, Alabama, on July 3, 2007, a year and half after decedent's death on January 17, 2006.  The complaint alleged

that decedent was an employee of Bashir's at the time of his death. In three counts Sharif sought benefits under Alabama's workers compensation statutes, applicable only to employees. The complaint also contained a count invoking Alabama's wrongful death statute. The complaint included a jury demand.  Neither Mohammed nor Musa, both of whom are unsophisticated and not good speakers of English, did not, according to Nationwide, notify Nationwide of a potential claim by Sharif until July 11, 2007, eight days after Sharif had filed his complaint in state court.  Exactly when each defendant was served does not appear.  Nationwide provided liability coverage of $300,000 for Bashir's, the named insured, and also, without naming them, covered Mohammed and Musa, as employees of Bashir's. Musa pulled the fatal trigger on January 17, 2006, whether accidentally or on purpose.  There would be a legitimate dispute over whether Musa was acting within the line and scope of his employment at the time the gun discharged, that is, but for the estoppel principle hereinafter discussed.

Decedent was on Bashir's premises when he was shot.  He had handled the same pistol before it was fired by Musa.  Whether or not decedent was Bashir's employee at the time of the incident would also be a matter of dispute, except for the fact that any such dispute has been resolved as a matter of law by judicial estoppel, under the scenario hereinafter described.  This determination of fact is the by-product of Sharif's Alabama court

action, in which Nationwide chose not to participate.

Musa had no reason to know that he, as an employee of Bashir's, was covered by the insurance policy issued by Nationwide. He was 15 years old, was born in Yemen, and had 9 years of schooling. There is no evidence that he was even aware of the existence of an insurance policy, much less that, as an insured, he had any obligation to notify Nationwide that he had shot someone. Was such a vicarious obligation attributable to Musa simply by virtue of his employment by the named insured? The court does not attempt to answer this question. In any event, none of the three defendants in the underlying case notified Nationwide directly of the incident until July 11, 2007, after Sharif had sued them, something they say was totally unexpected and came out of the blue. In fact, there was nobody to make a formal, effectual demand on defendants until Sharif was appointed personal representative of decedent, long after his death. Defendants never received a demand letter from anybody. A demand letter would have constituted a "claim", the word used in the insurance policy. Between July 11, 2007, and the date the defendants' answer was due in the state court, Nationwide undertook an investigation. A day or so before defendants were called upon to answer, Nationwide denied coverage, giving several reasons. It conspicuously did not include as a reason the failure of the insureds, or any of them, to timely inform Nationwide of the incident. Now, the most vociferous, if not

the only serious, Nationwide argument supporting its denial of coverage is its contention that the insureds failed to provide timely notice of the incident, i.e., the "claim". There were arguably good reasons for Nationwide to have denied indemnity. There was no reason to deny a defense under a reservation of rights. Because of a clear conflict of interest, Nationwide should have found a competent, entirely independent, defense lawyer whose loyalty would ostensibly be only to the insureds, and to provide defendants a defense under a reservation of rights. The court will not engage in a discussion of whether a lawyer being paid by an insurance company can divorce himself from the interest of his real employer, except to say that it is a perinneal and probably insoluble problem. The obligation to defend is stronger than the obligation to indemnify. Nationwide's refusal to provide a defense was a decision it made at its peril.

   Nationwide's insurance policy clearly did not cover Bashir's against any worker's compensation claims. Whether or not the state judge saw or understood that Bashir's had no worker's compensation coverage is not reflected in the trial record. In fact, there was no court reporter at the trial, which was held on one day, December 2, 2008. There is no transcript of the testimony, or of counsels' arguments or colloquy with the judge. The trial judge dismissed the worker's compensation claims on motion of defendants "on the basis that there is no evidence that the deceased, Tawfiq Sharif, was the

'employee'" of the defendants.

The record before this court reflects that during a recorded telephone conversation between Mohammed and a Nationwide investigator, Mohammed said that decedent was his employee. Mohammed may have been led by the Nationwide caller into this admission, or he may not have known what he was saying. Whether or not Sharif offered to settle the wrongful death claim for the policy limits, i.e. $300,000, nowhere appears. If Sharif made such an offer, it was not communicated to Nationwide.

The state trial judge allowed defendants to waive jury trial just before the trial began. She then recognized several oral stipulations of the parties, including the stipulation that "defendants have waived any defenses of contributory negligence and assumption of risks." Because there is evidence that Sharif and Musa were both playing with the gun before its discharge, the waiver of the defenses of contributory negligence and assumption of risk would be less than understandable but for the fact that after Nationwide's denial of a defense, defendants retained a lawyer of their own, who obviously was looking out only for them, and not for Nationwide. Why would defendants give up contributory negligence as a defense, unless they counted on the absent Nationwide to pay any judgment. Their alternative was, and still is, bankruptcy. The outcome of the instant case will prove whether defendants' state court lawyer was smart or not.

In her findings of fact, the state judge found that "Sharif was shot as the proximate result of the **unintentional** discharge of a forty caliber bullet." (emphasis added). An intentional act would not have been covered. The trial judge also found that Musa was a minor who had not been trained by Mohammed on how to use the pistol, that decedent was not an employee of Bashir's or of Mohammed, that decedent was not performing any task for Bashir's at the time of the shooting, and that Mohammed was aware that Musa, because of his age, was prohibited by ABC regulations and laws of the State of Alabama from selling alcohol and tobacco products, things Musa routinely did. Based on the parties' stipulations and the other findings of fact, the trial judge entered a verdict and judgment in favor of Sharif and against all three defendants, separately and severally, in the amount of $950,000 for the decedent's wrongful death. The state judge necessarily found negligence by all three defendants of a kind or kinds calling for punishment. She made no distinction between Sharif's theory of negligent supervision of Musa by Mohammed, and Sharif's theory of negligence by Musa for which his employers were liable under *respondeat superior*. In other words, it is impossible to tell the varying degrees of culpability by the defendants. Peculiar to Alabama, a monetary recovery for wrongful death is purely punitive. It does not depend upon intentional or malicious conduct. If there had been a jury trial, even with the same stipulations, and without

special jury interrogatories, what the jury verdict would have been is a matter of pure speculation. If furnished appropriate verdict forms the jury could have reached drastically differing awards as between defendants. For instance, the jury might have thought that a 15 year-old immigrant should not be severely punished for an unintentional, if stupid, act. The amount of this verdict, i.e. $950,000, is real money, even for an insurance company that chose not to be on the side of its insureds.

There was no motion for a new trial, no motion for remittitur, and no timely appeal.  Whether or not Nationwide learned from another source of the $950,000 judgment within time for it to appeal under a reservation of rights is not reflected.  Counsel for Sharif admitted to this court that he did not inform Nationwide of the state court result until the time for appeal had expired.  In any event, there was no appeal.  Instead, Nationwide filed the instant declaratory action, its only remaining possible escape route.

Although there are still questions of law that must be decided by the court, there are one or more disputes of material fact that can control or influence the outcome before a jury. This insurance contract requires prompt notice to Nationwide of any "claim".  The word "claim" may mean one thing to an insurance company and another thing to an individual insured, who was born in Yemen, especially in a case where *contra proferentum* is in play.  Can a "claim" be

8

effectually made to an "independent" agent who fails to pass it on to the insurer?  There is some evidence that the incident was promptly reported to the agent who had sold the policy to Bashir's. Certain language in this policy is sufficiently ambiguous to call for a jury determination of its meaning and of the intent of the parties under the totality of circumstances. The burden of proof will be on Nationwide. This court does not envy Nationwide as it assumes this burden.

The court finds it probable that counsel for Sharif, who started out his state court complaint with worker's compensation claims, would not have risked violating Rule 11, Alabama Rules of Civil Procedure, by alleging that decedent was an employee of Bashir's, unless he had substantial evidence of that fact. This question becomes academic.

Nationwide's refusal to provide a defense under a reservation of rights was unwise, if not disastrous. It automatically eliminated Nationwide's right to assert in this case, and to prove to a jury's satisfaction, facts contrary to those found by the state judge. The fact that Nationwide declined the invitation to the party sticks it with the damage inflicted at the party. The conclusions reached by the state judge, despite the absence of a transcript, are binding on Nationwide by estoppel.

Nationwide has not averred, or even suggested, that the state court proceeding was a collusive charade, designed to entrap it.

The time for Nationwide to amend its complaint to make such a charge has expired. It is too late for Nationwide to undertake such a sizeable burden, even if it wanted to. If Nationwide had timely made such a charge, there would still, on the current evidence, be no basis for a summary disposition, although the kid gloves would certainly have come off. Because Nationwide has not mounted a collateral attack on the state court result, unless obliquely, it is stuck with the state court findings. Whether Sharif could now make an offer to accept the policy limits, including the cost of the state court defense, and, if refused, to expose Nationwide to the entire $950,000 judgment, plus, is a question not asked so not answered.

For the foregoing separate and several reasons, the court finds that there are one or more disputes of material fact that preclude a Rule 56 disposition. Accordingly, all motions for summary judgment are hereby DENIED.

The case is SET for a pretrial conference **at 9:30 a.m., June 3, 2011,** in accordance with the attached pretrial instructions. Any *Daubert* motions must be filed **by May 27, 2011**.

DONE this 21st day of April, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

cc:  Fern Singer, Esq.